IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMORY G. SNELL, JR., Plaintiff, vs. STEVEN DESCOTEAUX, et al., Defendants. | Civil Action No._____ PLAINTIFF's MEMORANDUM IN SUPPORT OF TRO/PI MOTION |

I. Introduction:

Beginning in Sept. 1995, Mr. Snell &/or Plaintiff, has been unconstitutionally imprisoned as an Actual Innocent (28 USC §2241 (c)(3)). On 24 June 2019, City of Philadelphia Chief Medical Examiner Dr. Sam Gulino, "newly discovered" inter alia, (2) heart tissue slides while microscopically examining "original" histology of the 1995 autopsy of Elizabeth Snell, at the Boston Office of the Chief Medical Examiner (OCME). Dr. Gulino's findings concluded that each of these "coronary artery" slides exhibited severely occluded lumens of approximately "30-50%." The 1995 autopsy falsely alludes to the "coronary ostia and coronary arteries are patent and the vessels pursue their usual courses... ." (emphasis added).

Dr. Gulino's by way of a reasonable medical certainty or probability concluded six-times that there was "No evidence of Homicide/Asphyxia." See, 17 June 2020 Evidentiary Hearing, Barnstable Superior Court (Fishman,J.)(denying Mr. Snell's Rule 30/New Trial motion).

1.

Previous to that unconstitutional imprisonment, Plaintiff was a Construction Supervisor, and in May 1975, he mustered out of the United States Navy as a Vietnam era veteran. From 1975 to 1995, Plaintiff received medical care and treatment from the Veteran's Administration, for all service and civilian related disabilities, e.g., COPD/Asthma; Degenerative Joint Disease (DJD)/Ostheoarthritis (OA) in both knees; Lumbar Spinal Stenosis (LSS) in the lower back; joint stiffness; crepitus; bone marrow edema; synovitis; debilitating pain; muscle weakness; decreased musculoskeletal impairments; greater susceptibility to bone fracture, and ultimate loss of movements. In 1997/1998 for profit DOC medical provider Correctional Medical Services (CMS) "Indefintiely" Ordered 'special medical needs restrictions' for (a) backbrace, and (b) 'No stair climbing,' respectively.

On April 19, 2019, Dr. John Cadigan, a cardiac specialist by way of "Echocardiogram Report," found Plaintiff to have a "dilated aorta." Dr. Cadigan ordered a one-year follow-up. Deft. Descoteaux when contacted by Plaintiff regarding the dilated aorta, stated in a 2 March 2020 letter to Plaintiff: "Thank you for your letter and for including the recommendation of Dr. Cadigan. .."Will make sure you get the one (1) year follow-up EHCO cardiogram by June 2020. ..."

Prior to Deft. Descoteaux's 3/2/20 letter, Wellpath/CCS Concord Medical Director, Dr. Churchville issued on 8 Nov. 2018, a special medical needs restriction, for "No Stair Climbing," which immediately (5hours later) resulted in Plaintiff's transfer from Concord to Shirley-Medium. Despite that prior 1998 'Indefinite' prior 'No stair climbing' order, and Plaintiff's previous Old Colony Corr.Ctr.

2.

(OCCC) confinement, which is a State DOC ADA-compliant facility, Plaintiff was transferred July 2010 to Concord, a non-ADA complaint facility, where he was confined Eight (8) years, and suffered deliberate pain and suffering from having to climb stairs to participate in programs, services and activities, notwithstanding those 'Indefinite' 1997/1998 medically documented disabilities.

Several days upon arrival to Shirely-Medium (MCI-S), Deft. Flores, while conducting a pre-medical screening, opined: "I really don't see any need for [the 'No Stair climbing'] that order." At no time during the pre-screening did Deft. Flores preform a physical examination of any of my musculskeletal impairments; nor did Deft. Flores examine any Xrays or MRI's. Deft. Flores additionally, attempted to "DC" (discontinue) all my 2-decades old medication orders. Since my arrival, my medical care and treatment has been subpar, and in 64-years of life, globally travelled, including East Africa; I have experienced 1st class medical treatment, and every kind in between. Wellpath/CCs/Shirley-Medium's medical provider is criminally neglect in their medical treatment administered to me in the last 24-months, and I fear imminent death at their hands.

To that end, Plaintiff respectfully requests forthwith issuance of the TRO/PI to enjoin these Defendant's malicous disregard to his elective/resection surgery for that 16-month old dilated aorta/ascending root life threatening catastrophic event.

## FACTUAL ALLEGATIONS SUMMARY

Plaintiff, pro se, unskilled in legal advocacy, prays that this Honorable Court will accord his pleadings a liberal reading, and focus

on those 4/19/2019, any other supporting medical documents of Dr. Cadigan, who discovered that Plaintiff's heart has a dilated aorta and ascending root, and that the Defendant's carelessness, and reckless criminal neglect, places the Plaintiff in imminent risk of death. Albeit, brief, Plaintiff verifies that attached complaint --jury trial demand, and further prays that at sometime in the future, the Court will assign counsel, and allow for counsel to "Amend" the complaint, as more documented facts become available.

In sum, those verified factual allegations contained herein, and coupled with that verified complaint--jury trial demand, unassailably underscore the grave seriousness of Plaintiff's heart - dilated aorta/ascending root - condition, where without elective/ resection, imminent death is probable. Plaintiff pursuant to the 8th Amendment, as well as, the American w/Disabilities Act, 42 USC §12131(2), is a qualified individual with a disability, and as such, is protected by the United States Constitution against cruel and unusual punishment.

Furthermore, as the Defendant's receive the benefit of federal funds, they are a "public entity" per 42 USC §12131(1)(B), and constrained from depriving or denying the Plaintiff rights, services, programs and activities, afforded every citizen of the United States. As a public entity, the Defendant's are required to provide the Plaintiff with such professional medical - heart surgery - treatment as available to every other citizen in their care and custody, particularly, whereas, the circumstances - Plaintiff's unconstitutional imprisonment - denys his own ability to seek out professional cardiac care.

Finally, the United States Supreme Court in ESTELLE v. GAMBLE, 427 US 97, 108 (1976), has held that the State's are required to provide prisoners with such medical care and treatment currently the norm in society. The wholesale deprivation, and subsequent criminal neglect as to Plaintiff's dilated aorta/ascending root, is per se not the professional medical care afforded to society, especially, insomuch as, the risk of a catastrophic event, i.e., imminent death, without elective/resection surgery is, real and genuine, and medically the norm for similar circumstances as the Plaintiff. As "[a]n inmate[,] [Plaintiff] must rely on prison authorities to treat his medical [dilated aorta/ascending root] needs; if the authorities fail to do so, those needs will not be met." id. 427 US at 103. Because of the threat of imminent death if not immediately cared for, due to the progessiveness of this disease, "such a failure may [will] actually produce physical torture" for the Plaintiff by inflicting "pain and suffering which no one suggests would serve any penological purpose." id.

Wherefor, Plaintiff having undisputably and medically documented that "[the] government fails to fulfill [its] obligation, the courts have a responsibility to remedy the resulting Eighth Amendment violation. . ... Courts may not allow constitutional violations to continue simply because a remedy would involve an intrusion into the realm of prison administration." See, BROWN v. PLATA, 563 US 493, 511 (2011) (citation and internal quotations omitted).

Lastly, the 8th Amendment violation against the Plaintiff is the type that the PLRA mandates requires relief. 18 USC §3626(a)(2) ("preliminary injunctive relief must be narrowly drawn, extend no

5.

further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."). As shown by the Plaintiff, TRO/PI relief has "the scope of the order must be determined with reference to the constitutional violations established by the specific plaintiffs before the court"). BROWN, 563 US at 511. Plaintiff therefore is, entitled legally under the 8th Amendment/ADA to an injunction for the prevention of imminent death, whereas, the Defendants refuse to procure that one-year follow-up, which lapsed in June 2020, to correct that heart catastrophic event of probable aorta rupture, and consequent, imminent death.

## ARGUMENT

As a State prisoner, the Plaintiff is afforded every available medical treatment, that society expects for itself. In this instant, Plaintiff has been diagnosed with (a) dilated aorta, and (b) ascending root, both well known catastophic and fatal cardiac events. Since 1976, in ESTELLE v. GAMBLE, 427 US 97, the Supreme Court has upheld the treatment of prisoners to professional medical care, and has deemed that such medical treatment will be as available to prisoners, as to society in general. Logically, this constitutional protections has survived many attacks, but continues in force. See, BROWN v. PLATA, 563 US 493 (2011).

A- LIKELIHOOD OF SUCCESS IS GREAT

Plaintiff properly avers that no legitimate penological purpose can be served by Defendants permitting his imminent death from a ruptured dilated aorta/ascending root. Albeit, at the preliminary

injunction stage of the proceedings, the district court need not perdict the eventual outcome of the litigation. PERFUMANIA v. PERFULANDIA, 279 F.Supp.2d 86, 95 (D.P.R. 2003). Plaintiff's factual allegations, verified under pain of perjury, easily surpass the prelimianry injunction test, and is supported by the First Circuit's W HOLDING v. AIG Ins., 748 F.3d 377, 386 (2014), where the Court held: "[k]eep in mind (and we cannot stress this enough) [that] likelihood -- not certainty-- is the name of the game, and possibly--not actuality or probability--suffices, no matter how remote that possibility is."

B- IRREPARABLE MEDICAL HARM -- IMMINENT DEATH

Plaintiff correctly opines that his factual allegations verified as true and correct, recite and mirror those criminal negligent acts of denying professional medical -cardiac surgery- medical treatment, the Court found in REAVES v. DOC, 195 F.Supp.3d 383, 407 (D.Mass. 2016). Like the prisoner in REAVES, Plaintiff has a complicated medical condition, that can only be repaired by cardiac surgery, to strengthen his weakened aorta root. Without such specialized cardiac surgery immediately, the risk of catastrophic rupture and imminent death is real and genuine, and highly probable. To succeed on this 8th Amendment violation, Plaintiff must overcome the 2-prong test, e.g., objective component requires proof of a serious medical need, and the subjective prong, which requires showing defendants deliberate indifference to that need. *id*. Plaintiff has shown that his dilated aorta/ascending root is, a serious cardiac event, that left untreated, will immiently cause his death. Further, the

7.

Plaintiff has demonstrated that the defendant's are all too aware of the 4/19/2019 ECHOcardiogram Report of his dilated aorta and ascending root, its high risk and fatal outcome if not immediately repaired by thoracic surgery. Plaintiff's notice, e.g., exhaustion of all State administrative remedies, have done nothing to render that fatal cardiac event to a positive - elective surgery-conclusion. In sum, these defendant's knew of that imminent death from their inaction, and did not reasonably accommodate - elective surgery-Plaintiff in a prompt, professional or timely matter. See, VALLE-ARCE v. P.R. PORTS AUTH., 651 F.3d 190, 198 (1st Cir. 2011). The Court inherently is empowered to grant TRO/PI relief to immediately compel defendants to procure Plaintiff's cardiac surgery, as the irreparable medical harm is undenible. ROSS-SIMONS of WARWICK v. BACCARAT, 102 F.3d 12, 19 (1st Cir. 1996)((["I]f the plaintiff suffers a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel"). Compensating Plaintiff's Estate after his imminent death is, not accurately measurable, whereas, Plaintiff's Actual Innocence over the past 25 years could reach tens of millions of dollars.

C. BALANCE OF HARMS STRONGLY FAVORS PLAINTIFF.

It is beyond cavil that imminent death, far and away, outweighs any perceived harm the defendants can conjure up. Under the balance of harms test, Plaintiff unequivocally faces imminent death from a catastrophic cardiac event, of the defendants chosing, with no reasonable concern for Plaintiff's health or ewll being. See, ASPECT SOFTWARE v. BARNETT, 787 F.Supp.2d 118, 131 (D.Mass. 2011)("Any potentional harm caused to [Plaintiff] by a denial of [his] [TRO/PI]

motion must be balanced against any reciprocal harm caused to [defendants] by imposing of an injunction"). As is the custom, "[a] plaintiff [who] is claiming the loss of a constitutional right, courts commonly rule that even a temporary loss outweighs any harm to defendant and that a preliminary injunction should issue." See, ELROD v. BURNS, 427 US 373 (1976); 11A Charles Alan Wright & Arthur R. Miller, Fed. Prac. Pro. §2948.2 at 178 (2d ed. 1995). See,e.g., FARNAM v. WALKER, 593 F.Supp.2d 1000, 1016 (C.D. ILL. 2009)("If the plaintiff does not receive the care he needs, he will suffer pain, possible acute exacerbations of his cystic fibrosis, a deceased quality of life and a deceased life expectancy"). Plaintiff's deceased life expectency is, imminent death. This Court must find that Plaintiff exceeds the balance of harms, and TRO/PI must issue.

D. PUBLIC INTEREST WILL BENEFIT

It is always in the public's benefit when those tasked to administer the State's correctional facilities, obey the Constitution. HOBBY LOBBY v. SEBELIUS, 723 F.3d 1114, 1147 (10th Cir. 2013); DURAN v. ANAYA, 642 F.Supp. 510, 527 (D.NM. 1986)("Respect for Law, particularly by officials responsible for the administration of the State's correctional system, is in itself, a matter of highest public interest"); llewelyn v. OAKLAND CTY. PROSECUTOR's OFFICE, 402 F.Supp. 1379, 1393 (E.D.Mich. 1975)("It may be assumed that the Constitution is the ultimate expression of the public interest"). Prevention of the Plaintiff's imminent death by a cardiac surgery to repair his dilated aorta/ascending root, by procuring specialized heart services, by these defendants is, the best interests of the public.

## PLRA COMPLIANCE HEREIN ON THE FACTS IS SHOWN

Whereas, Plaintiff is not seeking anything but that which these defendants are constitutionally and stautorily mandated to provide, this Honorable Court must under 18 USC §3626(a)(2) deem that the issuance of the TRO/PI, will be narrowly drawn, so as to immediately enjoin those defendant's from denying Plaintiff forthwith cardiac surgery to repair his dilated aorta/ascending root, and to prevent a catastrophic event, and fatal imminent death. See, REAVES, 195 F.Supp #d at 426 (the plaintiff, has no way to mitigate the harm [imminent death] to his health).

## CONCLUSION

Wherefor, Plaintiff lacks a just and speedy remedy at Law, this most Honorable Court on those verified factual allegations, medical documentation, and Thoracic Surgeon studies, must be compelled to issue the TRO/PI to correct that callous criminal neglect of these defendant's in denying Plaintiff that immediate cardiac surgery to repair his dilated aorta/ascending root. So moved.

Signed, this 17th day of November 2020, pursuant to 18 USC §1746, under the pain and penalties of perjury, by way of personal knowledge, belief and opinion.

Respectfully submitted,
by, the Plaintiff,

Emory G. Snell, Jr., pro se
1 Harvard Rd.
Shirley, Ma. 01464-1218