United States District Court
District of Massachusetts

|  |  |
|---|---|
| Emory G. Snell, Jr.,            )<br>                                 )<br>        Plaintiff,               )<br>                                 )<br>        v.                       )<br>                                 )   Civil Action No.<br>Steven Descoteaux, et al.,       )   20-12093-NMG<br>                                 )<br>        Defendants.              )<br>                                 ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Pending before the Court are several motions filed by plaintiff Emory G. Snell, Jr. ("Snell" or "plaintiff"), an inmate housed at the Massachusetts Correctional Institution in Shirley, MA ("MCI-Shirley") proceeding pro se. The first motion was filed on September 29, 2022, and seeks permanent injunctive relief related to the provision of certain cardiac medications (Docket No. 177).

The second motion was filed on October 24, 2022, and again seeks injunctive relief, this time described as a temporary restraining order ("TRO") (Docket No. 190). Furthermore, plaintiff requests that this Court impose sanctions upon counsel who submitted an opposition to his first motion. For the reasons that follow, plaintiff's motions will be denied and sanctions will not be imposed upon defendants' counsel.

Plaintiff has also submitted numerous letters related to the issues raised in his two motions. See Docket Nos. 174, 176, 181, 186, 195 and 197.  In addition, he has filed letters concerning an allegedly improper COVID diagnosis and quarantine. See Docket Nos. 196 and 199.  The submission of such correspondence is an inappropriate way to supplement pending motions and the Court will address such submissions only in the interest of fully resolving all pending issues.  Finally, the Court will deny plaintiff's motion for an order allowing electronic docketing (Docket No. 185).

All other pending motions are held under advisement.

I.     **Background**

Plaintiff commenced this action in November, 2020, alleging that various people employed by or affiliated with the Massachusetts Department of Corrections ("the DOC") and Wellpath LLC ("Wellpath") - a private company that provides health services to inmates housed at MCI-Shirley and other DOC facilities - violated his rights under federal and state law by failing to provide him with adequate medical treatment and reasonable accommodation for a cardiac condition.  All but one of plaintiff's claims were dismissed in March, 2022. See Docket No. 101.

Plaintiff has filed a number of motions since that order, including several motions for injunctive relief against various defendants. The pending motions seek injunctive relief with respect to Snell's medical treatment and the conduct of defendants Steven Descoteaux, MD, Maria Angeles, MD, Carlos Flores, NP, and/or Michelle LaFountain, RN (collectively, "the Medical Defendants"), as well as other Wellpath employees at MCI-Shirley.

Snell has previously taken an oral anti-coagulant drug, Eliquis, twice daily as a "keep-on-person" or "KOP" medication. The KOP program permits inmates to hold multiple doses of certain, approved medications and self-administer those doses at the proper times. In recent months, however, Wellpath clinical staff at MCI-Shirley decided that Eliquis, like other oral anti-coagulants, poses a risk of adverse side effects and therefore must be administered at the MCI-Shirley Health Services Unit ("HSU") under the observation of clinical staff. Direct administration is intended to ensure that the correct dosage of a medication is taken at the correct time and that potentially dangerous side effects are minimized. Snell contends that this restriction on Eliquis is an "arbitrary confiscation" that has placed him in a "life-threatening cardiac situation."

The day after receiving Snell's September, 2022, motion for injunctive relief, this Court instructed the Medical Defendants

> to ensure that Snell receives all cardiac medications that he has been prescribed pending further consideration of this matter.

The Court did not resolve the issue of whether Snell's Eliquis prescription had to be provided to him as a KOP medication at that time.

## II. Motions for a Temporary Restraining Order

### A. Legal Standard

A motion for a temporary restraining order is evaluated by the same four factors as a motion for a preliminary injunction, namely: 1) the likelihood that the movant will succeed on the merits, 2) whether the movant is likely to suffer irreparable harm in the absence of preliminary relief, 3) the balance of the equities and 4) whether an injunction is in the public interest. Voice of the Arab World, Inc. v. MDTV Medical News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011); see Commerce Bank & Trust Co. v. Prop. Adm'rs, Inc., 252 F. Supp. 3d 14, 16 (D. Mass. 2017) (applying factors to motion for temporary restraining order).

Out of those factors, the likelihood of success on the merits "normally weighs heaviest in the decisional scales", Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009), and if a plaintiff is unable to show a reasonable likelihood of success, "the remaining factors become matters of idle curiosity . . . ." Jean v. Mass. State Police, 492 F.3d 24,

27 (1st Cir. 2007) (quoting New Comm. Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)).

### B. Application

#### 1. Plaintiff's Eighth Amendment Claim

Plaintiff alleges that the decision of Wellpath clinical staff at MCI-Shirley to require direct administration of his prescribed Eliquis medication violates the Eighth Amendment to the United States Constitution. Snell also claims that the Wellpath staff intend to "confiscate" other medications he receives under the KOP program, such as Betapace and Plavix, in violation of the Eighth Amendment.

An inmate must satisfy two requirements in order to state a claim for constitutionally inadequate medical care in violation of the Eighth Amendment. First, the alleged violation must be, according to an objective standard, in derogation of a "serious medical need." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (describing a serious medical need as one "so obvious that even a lay person" would readily see the need for medical attention). The provision of unconscionably inadequate medical care with respect to that "serious medical need" violates the Eighth Amendment. Id. at 96. Medical care, however, need not be ideal or tailored to an inmate's preferred regimen. Snell v. Neville, 998 F.3d 474, 495 (1st Cir. 2021). Rather, it must be reasonably commensurate with modern medical science, of a

quality "acceptable within prudent professional standards". Id. (quoting United States v. Derbes, 369 F.3d 579, 583 (1st Cir. 2004)).

Snell has not demonstrated that he is receiving inadequate medical care with respect to his cardiac medications. Wellpath clinicians have not denied Snell access to his Eliquis medication. Instead, they have decided, in a change that affects Snell and other inmates, that Eliquis is unsuitable for the KOP program because of its potential to cause dangerous side effects such as excessive bleeding. As a result, Snell must now receive his Eliquis twice daily at the MCI-Shirley HSU rather than by keeping an extended supply on his person for self-administration. According to the First Circuit Court of Appeals ("First Circuit"), the pertinent question is whether the inmate

> face[s] an "objectively intolerable" risk of harm resulting from the department's decision to make [the subject] medications available only through the daily med line.

Nunes v. Mass. Dep't of Corr., 766 F.3d 136, 142 (1st Cir. 2014).

Plaintiff cites evidence previously presented to this Court describing the risk of harm posed by his cardiac condition. He stresses the importance of receiving consistent access to his medications, including Eliquis, in order to treat his condition. Snell does not, however,

proffer any evidence which supports his assertion that administration of his Eliquis prescription at the MCI-Shirley HSU poses an "objectively intolerable" risk of harm. Id. at 143 (describing the inadequacy of complaints that were "unaccompanied by medical analysis and document only occasional medical problems arising from the policy change").

Although Snell claims that he may have trouble reaching the HSU without a wheelchair pusher to assist him, the Medical Defendants have attached an affidavit wherein Melissa Foster, an RN who oversees the MCI-Shirley HSU ("Foster"), states that

> [a]ccording to DOC staff, the distance from C Building to the HSU is less than a quarter mile, and on October 9, 2022, DOC assigned Mr. Snell a new pusher after Mr. Snell had submitted a written request to the assignment officer.[1]

Nor does Snell cite any plausible evidence in support of his claim that Wellpath staff intend to "confiscate", i.e. remove from the KOP program to direct administration at the HSU, any of his other medications. In fact, the affidavit submitted by Foster notes that

> Mr. Snell continues to receive all of his other KOP-designated medication, including Betapace and Plavix, as KOP. When the Director of Nursing spoke with Mr.

---

[1] The Court is aware that plaintiff has recently been transferred from the C-2 Housing Unit to his former cell in the A-2 Housing Unit. According to the Medical Defendants and the DOC, the A-2 Housing Unit is the closest housing unit to the HSU at MCI-Shirley. See Docket No. 200, at 5.

>   Snell on October 11, 2022, Mr. Snell reported that he received all of his medications, except Eliquis, as KOP medication.

As to the second requirement for an inmate to state an Eighth Amendment claim, Snell has not shown that the responsible official(s) had a state of mind of "deliberate indifference" towards his serious medical needs. Farmer v. Brennan, 511 U.S. 825, 834-36 (1994). Deliberate indifference encompasses only a "narrow band of conduct" that is "so inadequate as to shock the conscience". Snell, 998 F.3d at 497. The paucity of evidence demonstrating that Snell faces an intolerable risk of harm due to the change in administration of his Eliquis "make[s] it unreasonable to conclude that the [defendants] knowingly disregarded such a risk." Nunes, 766 F.3d at 167. In contrast, the Wellpath clinical staff decided to administer Eliquis at the HSU in order to reduce the risk of bleeding posed by oral anti-coagulants.

### 2. Plaintiff's Other Constitutional Claims

To the extent that Snell alleges that Wellpath retaliated against him in violation of his rights under the First and Fourteenth Amendments, the Court finds that those claims are also without merit. In order to state a claim for retaliatory conduct in violation of the First Amendment, an inmate must show that

> 1) he engaged in constitutionally protected conduct, 2) prison officials took adverse action against him, 3) with the intent to retaliate against him for engaging in the constitutionally protected conduct and 4) he would not have suffered the adverse action "but for" the prison officials' retaliatory motive.

Schofield v. Clarke, 769 F. Supp. 2d 42, 47 (D. Mass. 2011) (citation omitted).

The circumstances here do not support an inference that Wellpath clinical staff made the decision to administer Eliquis at the MCI-Shirley HSU to retaliate against Snell for engaging in constitutionally protected conduct.  Further, Snell has failed to make a plausible argument that the decision would not have been made "but for" an alleged retaliatory motive.  As already discussed, the Medical Defendants have convincingly responded that oral anti-coagulants such as Eliquis have the potential to cause dangerous bleeding and that direct administration at the HSU will ensure that the proper dosage is given at the proper time.

Finally, plaintiff has not provided a discernable basis for his fleeting reference to a substantive due process violation under the Fourteenth Amendment. See, e.g., Niemic v. UMass Corr. Health, 89 F. Supp. 3d 193, 210 (D. Mass. 2015) (holding that the failure "to receive one's preferred . . . treatment program is neither related to freedom from restraint nor an atypical and significant hardship") (cleaned up).

In light of the above, Snell has not demonstrated a reasonable likelihood of success on the merits of any of his claims for constitutional violations. That failure ends the temporary restraining order inquiry. See Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993) (explaining that "[i]n the ordinary course, plaintiffs who are unable to convince the trial court that they will probably succeed on the merits will not obtain interim injunctive relief"). Even if plaintiff's inability to show a reasonable likelihood of success on the merits did not end the inquiry, plaintiff fares no better with respect to the remaining TRO factors. He would not suffer irreparable harm because he has not been denied access to Eliquis or any of his other prescribed medications and neither the balance of equities nor interest of the public weigh in favor of emergency injunctive relief in this case.

### 3. Plaintiff's Allegations of Fraud and Request for Sanctions

In the second motion presently under consideration (Docket No. 190), Snell proclaims that the attorney for the Medical Defendants who opposed his first motion and the Wellpath employee who submitted an affidavit in support thereof perpetrated a variety of "frauds" and should be sanctioned. Those allegations are without merit.

As one example, Snell claims that Massachusetts DOC policy, specifically 103 DOC 661, "clearly affords [him] ELIQUIS KOP" and requests that the Court "closely scrutinize" the Medical Defendants' argument to the contrary. An attachment to the 103 DOC 661 policy lists categories of drugs that "are **NOT** included in the Keep-on-person program". Anti-coagulants are one of the categories of excluded medications listed therein. See Docket No. 183-1, at 21. Although Eliquis itself is not listed as an example under the "Anticoagulants" category, other oral anti-coagulants are listed and there is no dispute that Eliquis is an oral anti-coagulant. Thus, the Court has no reason to doubt that Eliquis has been designated for direct administration at the HSU or that, as stated in the affidavit,

> clinical staff determined that several patients, including Mr. Snell, should not have been provided Eliquis (apixaban) as a KOP medication.

### III. Plaintiff's Correspondence and Request for Electronic Filing Access

Many of the letters that plaintiff has filed in recent weeks relate to his motions for injunctive relief already addressed above. Those letters require no further comment.

Plaintiff has also submitted two letters in which he alleges that he was misdiagnosed with COVID-19, denied various medications and improperly quarantined in a substandard housing unit. The Medical Defendants have submitted a response that

addresses Snell's contentions (Docket No. 200). They assert that Snell: 1) was properly diagnosed with COVID-19 by a PCR test at the University of Massachusetts Leominster Hospital, 2) did not receive certain medications during the course of Paxlovid treatment, which has now ended, because of potential adverse drug interactions and 3) could not be placed in his preferred housing unit initially because it was not designated as a quarantine unit but has since been returned to his regular cell. The Court finds those responses to be satisfactory and any injunctive relief in that regard is unwarranted.

The Medical Defendants also aver that Snell's recent motions and correspondence seeking injunctive relief related to his medical care were filed prior to his exhaustion of an available grievance process. The Court is also aware of the excessive nature of such correspondence which is improper and will not be tolerated going forward.

Finally, the Court will deny plaintiff's request for electronic filing access (Docket No. 185). Snell has demonstrated a consistent inability to comply with the Local Rules of this District Court or to present matters properly to this Court in the form of formal pleadings. The requirement that Snell proceed by paper filing ensures at least some supervision by the Clerk's Office and contributes to the efficient resolution of motions. Although Snell points to a

purported extensive delay in the filing of his pleadings (Docket Nos. 174, 176 and 177), there was no such delay.[2]  Docket No. 174 was dated September 19, 2022, and docketed on September 23rd. Docket Nos. 176 and 177 were dated September 24, 2022, and were docketed on September 29th.

## ORDER

For the foregoing reasons, the motion of plaintiff for injunctive relief (Docket No. 177) and the motion of plaintiff for injunctive relief and the imposition of sanctions (Docket No. 190) are **DENIED**.

Plaintiff is hereby forewarned that the Court will not accept further correspondence which purports to supplement his pleadings or seeks additional remedies.  The motion of plaintiff for e-filing access (Docket No. 185), and any other relief sought therein, is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  November 10, 2022

---

[2] In its September 30, 2022, order (Docket No. 179), the Court inadvertently referred to those papers as having been filed in June.  As is clear from the face of the filings, however, they were written and filed in September.