```
                    United States District Court
                      District of Massachusetts
```

|                              |   |                    |
|------------------------------|---|--------------------|
| **Emory G. Snell, Jr.,**     | ) |                    |
|                              | ) |                    |
| Plaintiff,                   | ) |                    |
|                              | ) |                    |
| v.                           | ) |                    |
|                              | ) | Civil Action No.   |
| **Steven Descoteaux, et al.,** | ) | 20-12093-NMG     |
|                              | ) |                    |
| Defendants.                  | ) |                    |

**MEMORANDUM & ORDER**

**GORTON, J.**

Pending before the Court are two motions for preliminary injunctive relief filed by plaintiff Emory G. Snell, Jr. ("Snell" or "plaintiff"), an inmate housed at the Massachusetts Correctional Institution in Shirley, Massachusetts ("MCI-Shirley") proceeding pro se. See Docket Nos. 215 and 228. Both of his motions concern the conduct of employees and agents of the Massachusetts Department of Correction ("the DOC"), defendants in this case. For the reasons that follow, the motions will be denied.

I.  **Background**

The Court has previously described the background of this action in numerous memoranda and orders. Rather than recount that information yet again, it will instead provide the procedural history of the pending motions.

- 1 -

In February, 2023, plaintiff filed a motion for a preliminary injunction with respect to his law library access, and in particular his access to a Fastcase law library application. In April, 2023, Snell filed a second motion for a preliminary injunction in which he asserts that the DOC defendants are planning to retaliate against him by destroying certain of his stored legal materials. The Court thereafter instructed the DOC not to designate Snell's excess legal materials as contraband or dispose of those materials until the Court ruled on Snell's motion. The DOC defendants filed oppositions to plaintiff's motions to which plaintiff, by leave of this Court, filed a short reply in June, 2023.

## II. Plaintiff's Motions for Preliminary Injunctive Relief

### A. Legal Standard

A motion for a preliminary injunction and/or a temporary restraining order is evaluated by the following four factors: 1) the likelihood that the movant will succeed on the merits, 2) whether the movant is likely to suffer irreparable harm in the absence of preliminary relief, 3) the balance of the equities and 4) whether an injunction is in the public interest. Voice of the Arab World, Inc. v. MDTV Medical News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011); see Commerce Bank & Trust Co. v. Prop. Adm'rs, Inc., 252 F. Supp. 3d 14, 16 (D. Mass. 2017) (applying factors to motion for temporary restraining order).

Out of those factors, the likelihood of success on the merits "normally weighs heaviest in the decisional scales", Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009), and if a plaintiff is unable to show a reasonable likelihood of success, "the remaining factors become matters of idle curiosity . . . ." Jean v. Mass. State Police, 492 F.3d 24, 27 (1st Cir. 2007) (quoting New Comm. Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)).

**B. Application**

**1. Plaintiff's Law Library Access**

Plaintiff alleges that the DOC defendants have not provided him with the legal research tools he needs to prosecute the pending action and therefore he has been denied meaningful access to the courts. In particular, Snell seeks daily access to the law library at specific times and reinstatement of his access to a legal research application known as Fastcase. The Court finds that plaintiff is unlikely to succeed on the merits of his claims.

With respect to plaintiff's access to the law library, Snell initially sought an injunction providing him with daily access from 9:00 – 10:30 A.M. Monday through Friday (7.5 hours of access per week). According to the sworn affidavit of Clifford Shipton, a librarian at MCI-Shirley, Snell has received consistent, daily access to the law library from Monday to

Friday ever since certain COVID-19 restrictions were lifted on March 6, 2023. The exact time of day at which Snell may visit the law library depends upon the schedule of his non-recreational movement times. In fact, Snell now concedes that he has eight hours of weekly law library access. See Docket No. 241. This Court will not dictate the precise schedule that must be followed by the DOC to provide plaintiff with adequate law library access. Plaintiff has not shown that he has been impeded or frustrated in this litigation by the library schedule and nor has he demonstrated a likelihood of success on the merits of his claim. See Lewis v. Casey, 518 U.S. 343, 350-52 (1996).

Snell also demands that a legal research application, Fastcase, be reinstalled on certain tablets provided to inmates at MCI-Shirley. Although his contentions are unclear, he appears to assert that his inability to access the Fastcase application has denied him meaningful access to the courts and has resulted in the unjust enrichment of the contractor who provided the tablets (and the applications on those tablets). In view of plaintiff's daily access to the law library, the Court finds Snell's claim that his meaningful access to the courts depends upon reinstatement of the Fastcase application to be without merit. See id. at 352 (explaining that there are "various methods of assuring access to the courts").

Furthermore, there is no basis for the Court to enter a preliminary injunction in this case in order to prevent the purported unjust enrichment of a third-party contractor.

### 2. Plaintiff's Stored Legal Materials

The DOC has stored about 100 boxes of legal materials belonging to Snell for several years. Plaintiff asserts that the DOC defendants have retaliated against him by threatening to discard those materials without cause. The Court demurs.

In order to state a claim for retaliation, an inmate must show that

> 1) he engaged in constitutionally protected conduct,
> 2) prison officials took adverse action against him,
> 3) with the intent to retaliate against him for engaging in the constitutionally protected conduct and
> 4) he would not have suffered the adverse action 'but for' the prison officials' retaliatory motive.

Schofield v. Clarke, 769 F. Supp. 2d 42, 47 (D. Mass. 2011) (citation omitted).

The Court presumes that Snell's current litigation is a constitutionally protected activity and that the enforcement of regulations concerning the storage of his legal materials constitutes an adverse action against him. Nevertheless, the circumstances here do not suggest plausibly that such action was intended to retaliate against Snell for his protected conduct or that he would not have suffered the adverse action "but for" a retaliatory motive. A brief review of the regulations at issue

and the timeline of pertinent enforcement efforts and correspondence elucidates that conclusion. See id. (explaining that prison administrators are afforded "[w]ide-ranging deference . . . in the pursuit and preservation of prison safety, order and discipline").

103 C.M.R. 403.10(2)(c) provides that inmates at DOC facilities:

> may possess a maximum of one cubic foot of legal documents containing legal material in his or her assigned living quarters. If a written request is approved by the Superintendent, authorization to store legal material exceeding the one cubic foot limit may be obtained. Any authorized excess documents shall be stored in a pre-determined storage area accessible to the inmate, not in the inmate living quarters.

In February, 2023, Superintendent Shawn Zoldak ("Zoldak") informed Snell that the DOC had not received a valid written request with respect to the storage of Snell's 90+ boxes of legal materials (i.e. his materials in excess of the one cubic foot stored in his living quarters). Zoldak also enclosed prior correspondence sent to Snell in January, 2021, in which then-Superintendent Michael Rodrigues informed Snell about the pertinent regulations and asked him to file a valid written request for the storage of his excess legal materials. Such a request would allow the DOC to determine which excess legal materials should be approved for storage and which would not, according to the criteria set out in 103 C.M.R. 403 SOP,

X(A)(1). Finally, Zoldak told Snell that any unauthorized, excess legal materials would be treated as contraband and disposed of according to 103 C.M.R. 403.15.

Snell has since submitted a request to the DOC seeking authorization for storage of his excess legal material. In an exhibit attached by the DOC defendants, the Property Department responded in March, 2023, to Snell and informed him that, in accordance with 103 C.M.R. 403 SOP, X(A)(1), his request to store material related to closed cases would be denied but his request to store material related to pending cases would be allowed. Pursuant to 103 C.M.R. 403.15(1), the Property Department also told Snell that he could choose from the following three methods for disposal of the unauthorized excess materials:

> 1. have the property retrieved by a visitor;
>
> 2. have the property mailed out to a specified destination at the inmate's expense;
>
> 3. have the property disposed of as seen fit by the institution.

103 C.M.R. 403.15(1)(b)(1)-(3).

In view of the regulations applicable to Snell's voluminous excess legal material and the extended timeline afforded to him by the DOC to comply with such regulations, the Court concludes that the causal link between Snell's constitutionally protected activity and the DOC's enforcement of its regulations is absent.

**ORDER**

For the foregoing reasons, plaintiff's motions for preliminary injunctive relief (Docket Nos. 215 and 228) are **DENIED**.

**So ordered.**

  /s/ Nathaniel M. Gorton  
Nathaniel M. Gorton
United States District Judge

Dated:  July 7, 2023